**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARNOLD Y. STEINBERG,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 09-86** |
| | ) | |
| **THE SUPREME COURT OF** | ) | **Judge Nora Barry Fischer,** |
| **PENNSYLVANIA, RONALD D.** | ) | **U.S. District Judge** |
| **CASTILLE, individually and as the** | ) | |
| **Chief Justice of the Supreme Court of** | ) | |
| **Pennsylvania, THOMAS G. SAYLOR,** | ) | |
| **individually and as a Justice of the** | ) | |
| **Supreme Court of Pennsylvania, MAX** | ) | |
| **BAER f/k/a/ DAVID MAX BAER,** | ) | |
| **individually and as a Justice of the** | ) | |
| **Supreme Court of Pennsylvania,** | ) | |
| **SEAMUS P. MCCAFFERY,** | ) | |
| **individually and as a Justice of the** | ) | |
| **Supreme Court of Pennsylvania,** | ) | |
| **DEBRA TODD, individually and as a** | ) | |
| **Justice of the Supreme Court of** | ) | |
| **Pennsylvania, J. MICHAEL EAKIN,** | ) | |
| **individually and as a Justice of the** | ) | |
| **Supreme Court of Pennsylvania, and** | ) | |
| **JANE CUTLER GREENSPAN,** | ) | |
| **individually and as a Justice of the** | ) | |
| **Supreme Court of Pennsylvania,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**MEMORANDUM OPINION**

I.    **Introduction**

This action involves a constitutional challenge to a Pennsylvania Rule of Disciplinary

Enforcement concerning orders disbarring attorneys who have consented to disbarment during

the pendency of disciplinary proceedings against them.  Pending before the Court is a motion to

1

dismiss filed by the respondents and motions for a preliminary injunction, a writ of mandamus and leave to amend filed by the petitioner.  For the reasons that follow, the respondents' motion to dismiss (*Docket No. 29*) will be granted and the petitioner's motions for a preliminary injunction (*Docket No. 22*), a writ of mandamus (*Docket No. 23*), and leave to amend (*Docket No. 51*) will be denied.

## II.   Factual Background

Since this matter comes before the Court on a motion to dismiss, the allegations contained in the third verified complaint in equity are assumed to be true.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  Petitioner Arnold Y. Steinberg ("Steinberg") is an attorney who, until very recently, was licensed to practice law in the Commonwealth of Pennsylvania.  (Docket No. 21 at ¶ 1).  The Supreme Court of Pennsylvania is the highest court in Pennsylvania.  (*Id.* at ¶ 2).  Respondent Ronald D. Castille serves as the Chief Justice of the Pennsylvania Supreme Court.  (*Id.* at ¶ 3).  Respondents Thomas G. Saylor, Max Baer, Seamus P. McCaffery, Deborah Todd, J. Michael Eakin and Jane Cutler Greenspan serve as Justices of the Pennsylvania Supreme Court.  (*Id.* at ¶¶ 4-9).  Under the Pennsylvania Constitution, the Pennsylvania Supreme Court has the power to prescribe general rules governing "admission to the bar" and the "supervision of all officers of the judicial branch."  PA. CONST., ART. V, § 10(c).  Pursuant to this authority, the Pennsylvania Supreme Court has promulgated the Rules of Professional Conduct and the Rules of Disciplinary Enforcement, which govern the conduct and discipline of attorneys licensed to practice law in Pennsylvania.  *Beyers v. Richmond*, 937 A.2d 1082, 1091 (Pa. 2007).

Steinberg underwent open heart surgery on October 5, 2007.  (Docket No. 21 at ¶ 71).

On December 13, 2007, Pennsylvania's Office of Disciplinary Counsel filed a petition for discipline[1] against Steinberg, alleging violations of Rules of Professional Conduct 1.4(a)(4),[2] 1.15(a), 1.15(b),[3] and 8.4(c).[4]  (Docket No. 30-2).  In accordance with Rule of Disciplinary Enforcement 208(b), a formal hearing was scheduled for an unspecified date in May 2008.  (Docket No. 21 at ¶ 73).  Because he was still recovering from open heart surgery, Steinberg requested a delay in the proceedings to enable him to regain his strength.  (*Id.*).  Nevertheless, he was informed by both the Office of Disciplinary Counsel and his own counsel that such a delay could not be obtained.  (*Id.* at ¶ 74).

Rule of Disciplinary Enforcement 215(a) permits an attorney who is subject to a disciplinary complaint to resign from the bar rather than contest the charges contained in the petition for discipline.  PA.R.D.E. 215(a).  Rule 215(a) provides:

> **(a) Voluntary resignation.**–An attorney who is the subject of an investigation into allegations of misconduct by the attorney may submit a resignation, but only by delivering to the Board a verified statement stating that the attorney desires to resign and that:
> (1) the resignation is freely and voluntarily rendered; the attorney is not being subjected to coercion or duress; the attorney is fully aware of the implications of submitting the resignation; and whether or not the attorney has consulted or followed the advice of counsel in connection with the decision to resign;
> (2) the attorney is aware that there is presently pending investigation into

---

[1]Under Pennsylvania Rule of Professional Conduct 208(b)(1), formal disciplinary proceedings against an attorney are instituted by the filing with the Disciplinary Board of the Supreme Court of Pennsylvania "a petition setting forth with specificity the charges of misconduct" underlying the proceedings.  PA.R.P.C. 208(b)(1).

[2]Pennsylvania Rule of Professional Conduct 1.4(a)(4) provides that "[a] lawyer shall . . . promptly comply with reasonable requests for information . . . ."  PA.R.P.C. 1.4(a)(4).

[3]Pennsylvania Rule of Professional Conduct 1.15(b) generally requires an attorney to keep the property of his or her clients separate from his or her own property.  PA.R.P.C. 1.15(b).  Rule 1.15(a) contains specific guidelines concerning the precise manner in which a client's property is to be safeguarded.  PA.R.P.C. 1.15(a).

[4]Pennsylvania Rule of Professional Conduct 8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."  PA.R.P.C. 8.4(c).

allegations that the attorney has been guilty of misconduct the nature of which the verified statement shall specifically set forth;

(3) the attorney acknowledges that the material facts upon which the complaint is predicated are true; and

(4) the resignation is being submitted because the attorney knows that if the charges were predicated upon the misconduct under investigation the attorney could not successfully defend against them.

PA.R.D.E. 215(a).  On April 18, 2008, Steinberg signed a verified statement of resignation which included all of the information required under Rule 215(a).  (Docket No. 30-3 at 2-3).  The statement included an addendum providing that it would not be delivered to the Disciplinary Board of the Supreme Court of Pennsylvania ("Disciplinary Board") before October 18, 2008. (*Id.* at 4).  This delay was apparently designed to give Steinberg time to conclude some of the cases which he had already begun.  He agreed not to accept new clients or cases in the meantime.[5]  (*Id.*).

Steinberg avers that, at the time that he signed his verified statement of resignation, he

---

[5]The addendum also purported to require Steinberg to inform four clients with cases pending in this Court that he would no longer be able to represent them as of December 1, 2008.  (Docket No. 30-3 at 4-5).  Steinberg was supposed to inform these clients of his resignation in letters sent no later than May 2, 2008.  (*Id.*).  Copies of those letters were to be provided to the Office of Disciplinary Counsel no later than May 5, 2008.  (*Id.* at 5).  The inclusion of such terms in the agreement between Steinberg and the Office of Disciplinary Counsel strikes the Court as having been improper.  Congress has enacted legislation which provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

28 U.S.C. § 1654.  As the plain language of this statutory provision makes clear, it is this Court's prerogative to determine whether, and under what circumstances, a particular individual may act as "counsel" in this Court.  Neither the Pennsylvania Supreme Court nor its Disciplinary Board may prohibit an attorney admitted to practice in a federal court from continuing to do so after his or her resignation from the Pennsylvania bar.  *Surrick v. Killion*, 449 F.3d 520, 531-532 (3d Cir. 2006).  It is axiomatic that "where federal law authorizes an agent to practice before a federal tribunal, the federal law preempts a state's licensing requirements to the extent that those requirements hinder or obstruct the goals of federal law."  *Id.* at 530.  This Court has the authority to promulgate its own rules governing the admission and discipline of attorneys.  28 U.S.C. § 2071.  "Admission to practice law before a state's courts and admission to practice before the federal courts in that state are separate, independent privileges."  *In Re Poole*, 222 F.3d 618, 620 (9th Cir. 2000).  While disbarment from a state bar often leads to disbarment from a federal bar, one's ability to practice in a federal court is not a proper concern of a state disciplinary board.

was suffering from "ill health" and was in a "weakened and diminished condition." (Docket No. 21 at ¶ 74). He allegedly lacked the "necessary stamina" to defend himself against the charges which had been leveled against him. (*Id.* at ¶ 75). His doctors had advised him that, after his open heart surgery, he would endure periods of depression. (*Id.* at ¶ 77). Steinberg also alleges that his signing of the verified statement was the product of "fraud, coercion, and duress." (*Id.* at ¶ 74).

The verified statement was forwarded to the Pennsylvania Supreme Court on October 24, 2008. (*Id.* at ¶ 76). On November 15, 2008, Steinberg filed a "verified motion to withdraw statement of resignation" with the Pennsylvania Supreme Court, contending that he had signed a verified statement of resignation solely because of his health problems. (Docket No. 30-4 at 2-8). He sought the appointment of a special master to investigate whether disciplinary action short of disbarment would have been imposed if he had opted to contest the pending disciplinary charges. (*Id.* at 7-8). In a response dated November 26, 2008, the Office of Disciplinary Counsel argued that Steinberg had voluntarily signed an "irrevocable" verified statement of resignation, and that his verified motion to withdraw statement of resignation should be denied. (Docket No. 30-5 at 2-18). Steinberg filed a response on November 30, 2008, refuting the arguments which had been advanced by the Office of Disciplinary Counsel. (Docket No. 30-6 at 2-17). On December 2, 2008, the Office of Disciplinary Counsel informed the Pennsylvania Supreme Court that it would not respond further to Steinberg's arguments. (Docket No. 30-7 at 2).

On December 30, 2008, the Pennsylvania Supreme Court issued two *per curiam* orders relating to Steinberg. One such order stated:

AND NOW, this 30th day of December, 2008, there having been filed with

this Court by Arnold Yale Steinberg his verified Statement of Resignation dated April 18, 2008, stating that he desires to resign from the Bar of the Commonwealth of Pennsylvania in accordance with the provisions of Rule 215, Pa.R.D.E., it is

ORDERED that the resignation of Arnold Yale Steinberg is accepted; he is disbarred on consent from the Bar of the Commonwealth of Pennsylvania; and he shall comply with the provisions of Rule 217, Pa.R.D.E. Respondent shall pay costs, if any, to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

(Docket No. 30-12 at 2). This order was issued pursuant to Rule of Disciplinary Enforcement 215(b), which provides:

**(b) Order of disbarment.–**Upon receipt of the required statement, the Board shall file it with the Supreme Court and the Court shall enter an order disbarring the attorney on consent.

PA.R.D.E. 215(b). The other order issued by the Pennsylvania Supreme Court stated:

AND NOW, this 30th day of December, 2008, the Motion to Withdraw Statement of Resignation is denied.

(Docket No. 30-13 at 2).

On January 5, 2009, Steinberg filed a "motion for reconsideration and to stay order" with the Pennsylvania Supreme Court, seeking a stay of the order of disbarment and the withdrawal of his verified statement of resignation. (Docket No. 30-8 at 2-7). Two days later, he filed an "emergency motion to correct the Supreme Court website." (Docket No. 30-10 at 2-5). Rule of Disciplinary Enforcement 217(d) provides that "[o]rders imposing suspension, disbarment or transfer to inactive status shall be effective 30 days after entry." PA.R.D.E. 217(d). Steinberg contended that the Pennsylvania Supreme Court's website had wrongfully listed him as having been "disbarred" even though his license was still active for a period of thirty days. (Docket No.

6

30-10 at 3-4). On January 21, 2009, the Pennsylvania Supreme Court denied both of these motions in a *per curiam* order which stated:

> AND NOW, this 21st day of January, 2009, the Motion for Reconsideration and to Stay Order and the Emergency Motion to Correct the Supreme Court Website are hereby denied.

(Docket No. 30-14 at 2).

In a letter to Elaine Bixler ("Bixler"), the Executive Director and Secretary of the Disciplinary Board, dated February 10, 2009, Steinberg requested a *pro rata* refund of his annual assessment fee. (Docket No. 21-2). He had paid the required assessment fee to keep his license active from July 1, 2008, through July 1, 2009, but the Pennsylvania Supreme Court's disbarment order had rendered him unable to practice law for the balance of that time period. (*Id.*). Bixler responded on February 19, 2009, with a letter informing Steinberg that the assessment fee was not prorated, and that he was not entitled to the *pro rata* refund that he had requested in his letter. (Docket No. 21-3).

## III.  **Procedural History**

Steinberg commenced this action against the Supreme Court of Pennsylvania on January 23, 2009, contending that the actions of that Court in relation to his disbarment had constituted violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. (Docket No. 1). He sought redress pursuant to 42 U.S.C. § 1983. Two days later, he filed motions seeking a temporary restraining order and a preliminary injunction. (Docket Nos. 2 & 3). On January 28, 2009, the Pennsylvania Supreme Court filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket

No. 8). The Court entertained oral arguments from the parties on February 5, 2009. (Docket No. 35-2). Steinberg's motion for a temporary restraining order was denied on that occasion. (*Id.* at 29). Steinberg orally requested leave to amend his complaint. (*Id.* at 39). Although the Pennsylvania Supreme Court initially objected to Steinberg's motion to amend on the ground of futility of amendment, this objection was withdrawn on February 10, 2009. (Docket No. 14).

On March 3, 2009, Steinberg filed his first amended complaint, seeking both a preliminary injunction and a writ of mandamus. (Docket No. 16). In addition to the Pennsylvania Supreme Court, Steinberg named each of the individual Justices serving on that Court. (*Id.*). The first amended complaint was stricken for failure to comply with this Court's internal rules. (Docket No. 18). Steinberg filed his second amended complaint on March 11, 2009. (Docket No. 19). The second amended complaint was also stricken for failure to comply with this Court's internal rules. (Docket No. 20). On March 15, 2009, Steinberg filed his third verified complaint in equity. (Docket No. 21). That same day, he filed motions for a preliminary injunction and a writ of mandamus. (Docket Nos. 22 & 23). In addition to his claims under the Due Process and Equal Protection Clauses, Steinberg filed a claim under the Takings Clause of the Fifth Amendment based on the Pennsylvania Supreme Court's refusal to give him a *pro rata* refund of his assessment fee.[6] (Docket No. 21 at ¶¶ 108-114). The respondents filed a renewed motion to dismiss on March 25, 2009, along with a supporting memorandum. (Docket Nos. 29 & 30). Responses to Steinberg's motions for a preliminary injunction and a writ of mandamus were also filed on that day. (Docket Nos. 27-28, 31-32).

---

[6]The Takings Clause of the Fifth Amendment is applicable to the States by virtue of the Due Process Clause of the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160 (1980).

Steinberg filed responsive briefs on April 14, 2009. (Docket Nos. 33-25). On April 25, 2009, the respondents filed a reply brief in support of their motion to dismiss. (Docket No. 37). That same day, the respondents filed motions to strike some of the briefs which had been previously filed by Steinberg, arguing that they were not in compliance with the Court's internal rules. (Docket Nos. 38-43). Steinberg sought leave to file his preexisting briefs three days later. (Docket Nos. 44 & 45). On May 4, 2009, Steinberg moved for leave to amend his complaint in order to seek compensatory and punitive damages against the respondents for publishing a notice of his disbarment in the *Beaver County Times* even though he had not maintained a law office in Beaver County for over two decades. (Docket Nos. 51 & 51-2). The Court subsequently granted Steinberg's requests for leave to file his preexisting briefs. The respondents were given until June 1, 2009, to file responsive briefs. (Docket No. 53). On May 6, 2009, the respondents filed a response in opposition to Steinberg's motion for leave to amend. (Docket Nos. 54 & 55).

Steinberg filed an addendum on May 31, 2009. (Docket No. 58). This addendum consisted of documents related to disbarment proceedings initiated against him by the United States Court of Appeals for the Third Circuit.[7] (*Id.*). The respondents filed their final reply briefs on June 1, 2009. (Docket Nos. 59-61).

## IV.    <u>Standards of Review</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window*

---

[7]Steinberg was disbarred from the practice of law in this Court on May 12, 2009. (Civil Action No. 09-mc-00001, Docket No. 6). Two subsequent motions for reconsideration were denied on June 2, 2009, and June 4, 2009. (*Id.*, Docket Nos. 11 & 13).

*Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D.Pa. 2007), quoting *Mortenson v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977). As the party asserting jurisdiction, the plaintiff bears the burden of showing that his or her claims are properly before the court. *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Rule 12(b)(1) motion, a court must determine whether the attack on its jurisdiction is a facial attack or a factual attack. A facial attack challenges the sufficiency of the plaintiff's pleadings. *Petruska v. Gannon University*, 462 F.3d 294, 302, n. 3 (3d Cir. 2006). When considering a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true. *Id.* A factual attack on the court's jurisdiction must be treated differently. *Id.* When considering a factual attack, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself the jurisdictional issues raised in the motion to dismiss. *Mortensen*, 549 F.2d at 891.

In light of the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008), quoting *Twombly*, 550 U.S. at 570. This standard requires more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must allege a sufficient number of facts "to raise a right to relief above the speculative level." *Id.* This requirement is designed to facilitate the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of [a] claim *showing that the pleader is entitled to relief*." Fed. R. Civ. P.

8(a)(2)(emphasis added).

In considering a motion to dismiss, a court accepts all of the plaintiff's allegations as true and construes all inferences drawn from those allegations in the light most favorable to the plaintiff. *Buck v. Hampton Township School District*, 452 F.3d 256, 260 (3d Cir. 2006). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989). In addition to the allegations contained in the complaint, a court may consider matters of public record, exhibits attached to the complaint, and other items appearing in the record of the case. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384, n. 2 (3d Cir. 1994).

V.      **Discussion**

Steinberg challenges the constitutionality of Rule 215(b) as applied to him and similarly situated individuals. The Pennsylvania Supreme Court has promulgated the Rules of Disciplinary Enforcement pursuant to its "inherent and exclusive power to supervise the conduct of attorneys," who are considered to be "its officers." PA.R.D.E. 103. Although attorneys are frequently referred to as "officers of the court," the United States Supreme Court has observed that an attorney does not become a government official when he or she obtains a license to practice law. *In Re Griffiths*, 413 U.S. 717, 729 (1973). "The word 'officer' as it has always

11

been applied to lawyers conveys quite a different meaning from the word 'officer' as applied to people serving as officers within the conventional meaning of that term." *Cammer v. United States*, 350 U.S. 399, 405 (1956)(footnote omitted). Consequently, a court's ability to regulate the conduct of its attorneys is not as broad as its authority to regulate the conduct of its employees. *Republican Party of Minnesota v. White*, 536 U.S. 765, 796 (2002)(Kennedy, J., concurring). The power of a court to disbar or otherwise discipline an attorney must be exercised in conformity with the Constitution of the United States.[8] *In Re Poole*, 222 F.3d 618, 620 (9th Cir. 2000). In *Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232 (1957), the Supreme Court explained:

> We need not enter into a discussion whether the practice of law is a "right" or a "privilege." Regardless of how the State's grant of permission to engage in this occupation is characterized, it is sufficient to say that a person cannot be prevented from practicing except for valid reasons. Certainly the practice of law is not a matter of the State's grace.

*Schware*, 353 U.S. at 239, n. 5. It is firmly established that "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Id.* at 238-239.

---

[8]The Court does not mean to suggest that a court's ability to terminate its own employees is not subject to constitutional limitations. A public employer's prerogatives in the employment setting are not unlimited. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-548 (1985); *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Nevertheless, it is beyond dispute that governmental entities have broader authority when they act as employers than they do when they act as sovereigns. *Waters v. Churchill*, 511 U.S. 661, 675 (1994)(plurality opinion). Unless actually employed by the court at issue, an attorney's status as an "officer of the court" does not make him or her the equivalent of an *employee* of the court. *Cammer v. United States*, 350 U.S. 399, 405 (1956). When a court seeks to impose disbarment or other discipline upon an attorney, it acts in its *sovereign* capacity. Therefore, an attorney facing disbarment or discipline enjoys constitutional rights in the disciplinary context that are not significantly different from those enjoyed by members of the general public in other contexts. *Republican Party of Minnesota v. White*, 536 U.S. 765, 796 (2002)(Kennedy, J., concurring)("Petitioner Gregory Wersal was not a sitting judge but a challenger; he had not voluntarily entered into an employment relationship with the State or surrendered any First Amendment rights. His speech may not be controlled or abridged in this manner.").

While "[a] State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar," it is clear that any such standards of qualification "must have a rational connection with the applicant's fitness or capacity to practice law." *Id.* at 239.

An attorney has a constitutionally protected property interest in his or her license to practice law. *Cleveland v. United States*, 531 U.S. 12, 25, n. 4 (2000)("In some contexts, we have held that individuals have constitutionally protected property interests in state-issued licenses essential to pursuing an occupation or livelihood."); *Gershenfeld v. Justices of the Supreme Court of Pennsylvania*, 641 F.Supp. 1419, 1423 (E.D.Pa. 1986)("It is undisputed that plaintiff's license to practice law, which has been in place for 35 continuous years, is a property interest sufficient to invoke due process protections."). Because he had a property interest in his license to practice law, Steinberg could be lawfully "deprived" of this interest only in accordance with "due process of law." *In Re Poole*, 222 F.3d at 620. Of course, no "deprivation" occurs when an individual *voluntarily* relinquishes a liberty or property interest. *Zinermon v. Burch*, 494 U.S. 113, 117, n. 3 (1990)("If only those patients who are competent to consent to admission are allowed to sign themselves in as 'voluntary' patients, then they would not be deprived of any liberty interest at all."). Thus, Steinberg suffered no "deprivation" if he voluntarily resigned in accordance with Rule 215(a). Nonetheless, the Court must accept as true Steinberg's allegation that his resignation from the Pennsylvania bar was "procured by fraud, duress, or coercion." (Docket No. 21 at ¶ 32). For this reason, the Court's analysis must proceed on the assumption that Steinberg's decision to submit his resignation was not truly "voluntary" within the meaning of Rule 215(a).

Steinberg alleges violations of both the Due Process Clause and the Equal Protection Clause. (*Id.* at ¶¶ 93-107, 115-132). His claims under the Equal Protection Clause appear to be based on the "class of one" theory discussed by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The crux of Steinberg's argument is that the Equal Protection Clause prohibited the Pennsylvania Supreme Court from disbarring him for engaging in conduct for which other attorneys had received significantly less severe forms of discipline. (*Id.* at ¶¶ 115-132). His claims under the Due Process Clause are based on a more generalized challenge to Rule 215(b). (*Id.* at ¶¶ 93-107). Steinberg contends that Rule 215(b) imposed a "ministerial" duty on the Pennsylvania Supreme Court to enter an order disbarring him on consent upon receipt of his verified statement of resignation, regardless of whether the Office of Disciplinary Counsel had procured that statement in a lawful manner and despite the fact that he had filed a motion to withdraw it. (*Id.* at 100). The Court understands Steinberg to argue that Rule 215(b) creates an irrebuttable presumption that *every* verified statement of resignation is authentic, thereby requiring an order of disbarment on consent even where such a statement is obtained only because of fraud, duress, coercion, or forgery.[9] Steinberg contends that Rule 215(b) violates the Due Process Clause by mandating an attorney's disbarment upon receipt of a verified statement of resignation in his or her name without allowing for an inquiry into whether his or her signing

---

[9] Steinberg does not claim that his signature was forged. Nevertheless, the logic of his argument would be equally applicable in a case involving forgery. He essentially argues that Rule 215(b) requires the Pennsylvania Supreme Court to disbar an attorney on consent upon receipt of a verified statement of resignation in his or her name regardless of whether the statement has been procured in a legal manner. PA.R.D.E. 215(b)("Upon receipt of the required statement, the Board *shall* file it with the Supreme Court and the Court *shall* enter an order disbarring the attorney on consent.")(emphasis added).

of the statement had truly been "voluntary" within the meaning of Rule 215(a).[10]  (Docket No. 35 at 33-35).  With that in mind, the Court now turns to the specific issues contested by the parties in this case.

## A.  The *Rooker-Feldman* Doctrine

The respondents contend that this Court lacks jurisdiction over Steinberg's Due Process Clause and Equal Protection Clause claims because of what is commonly referred to as the "*Rooker-Feldman* doctrine."[11]  (Docket No. 30 at 5-11).  That doctrine is based on the construction of the federal jurisdictional statutes enacted by Congress.  As a "district court" within the meaning of 28 U.S.C. §§ 1331 and 1343, this Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," as well as "original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, or any right, privilege or immunity secured by the Constitution of the United States . . . ."  28 U.S.C. §§ 1331 & 1343(a)(3).  Congress has not authorized this Court to exercise "appellate jurisdiction" in cases of this kind.

The Supreme Court has appellate jurisdiction to review decisions rendered by state courts pursuant to 28 U.S.C. § 1257, which provides:

> **§ 1257.  State courts; certiorari**
> **(a)** Final judgments or decrees rendered by the highest court of a State in which a

---

[10]Although reasonable minds could differ as to whether Steinberg's construction of Rule 215(b) is correct, there does appear to be some support for it in the Pennsylvania Supreme Court's jurisprudence.  *Office of Disciplinary Counsel v. Jepsen*, 787 A.2d 420, 425-426 (Pa. 2002)("The Rules of Disciplinary Enforcement do not provide for the revocation of a verified statement of resignation that has been accepted by this Court.").

[11]The respondents apparently do not believe that Steinberg's Takings Clause claims are barred by the *Rooker-Feldman* doctrine.  (Docket No. 30 at 16-17).

decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

**(b)** For the purposes of this section, the term "highest court of a State" includes the District of Columbia Court of Appeals.

28 U.S.C. § 1257. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923), the Supreme Court construed a statutory predecessor to § 1257 to vest exclusive federal appellate jurisdiction in the Supreme Court to review decisions issued by state courts. Speaking through Justice Van DeVanter, the Supreme Court explained that because the jurisdiction possessed by the district courts was "strictly original," a district court could not exercise *de facto* appellate jurisdiction by entertaining a supposedly "original" action seeking only to reverse a decision rendered by a state tribunal. *Rooker*, 263 U.S. at 416. The Supreme Court reaffirmed this principle in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983), holding that United States district courts do not have jurisdiction over "challenges to state-court decisions in particular cases arising out of judicial proceedings."[12] The *Rooker-Feldman* doctrine derives its name from the Supreme Court's decisions in *Rooker* and *Feldman*.

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court defined the parameters of the *Rooker-Feldman* doctrine more clearly. Speaking through

---

[12]The *Rooker-Feldman* doctrine is based solely on the interpretation of federal jurisdictional statutes. It is not based on the Constitution. Congress has the constitutional authority to vest inferior federal courts with jurisdiction to review certain state-court decisions, provided that it does not purport to give federal courts jurisdiction that could not be exercised under Article III. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292, n. 8 (2005)("Congress, if so minded, may explicitly empower district courts to oversee certain state-court judgments and has done so, most notably, in authorizing federal habeas review of state prisoners' petitions.").

Justice Ginsburg, the Supreme Court declared:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil*, 544 U.S. at 284. In the aftermath of *Exxon Mobil*, it is clear that properly invoked federal adjudicatory jurisdiction does not vanish when a state court renders a judgment involving the same or related questions involved in a concurrent action in a federal court. *Id.* at 292. The effect of such a state-court judgment in parallel federal-court proceedings is governed by federal preclusion law, as codified at 28 U.S.C. § 1738, rather than by the *Rooker-Feldman* doctrine. *Id.* at 293; *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006). Consequently, the *Rooker-Feldman* doctrine can be invoked as a jurisdictional bar only where a federal-court action has been commenced *after* the rendering of a judgment by a state court. *Green v. City of New York*, 438 F.Supp.2d 111, 119-121 (E.D.N.Y. 2006).

The state-court actions at issue in this case are the Pennsylvania Supreme Court's orders of December 30, 2008, disbarring Steinberg on consent and denying his motion to withdraw statement of resignation. (Docket No. 30-12 at 2; Docket No. 30-13 at 2). These orders were issued prior to the commencement of the instant action. For this reason, the applicability of the *Rooker-Feldman* doctrine is not precluded by the sequence-based reasoning of *Exxon Mobil*. At the oral argument session conducted on February 9, 2009, Steinberg informed the Court that he had not petitioned the United States Supreme Court for a writ of certiorari. (Docket No. 35-2 at

14). He stated that he had not done so because he was not seeking to "reverse" a decision of the Pennsylvania Supreme Court. (*Id.*). Moreover, he pointed out that the *per curiam* orders issued by the Pennsylvania Supreme Court had not been accompanied by opinions stating the reasons for those orders. (*Id.*). The respondents nevertheless contend that the orders were subject to review by the United States Supreme Court pursuant to § 1257, and that this Court's exercise of jurisdiction in this case is precluded under the *Rooker-Feldman* doctrine. (Docket No. 30 at 5-11). In response, Steinberg argues that the relief that he seeks is purely prospective, thereby making the *Rooker-Feldman* doctrine inapplicable. (Docket No. 35 at 19-28).

The Court's analysis must begin with an examination of the Supreme Court's decision in *Feldman*, which is squarely applicable to the instant case. In that case, two applicants for membership in the District of Columbia bar filed petitions with the District of Columbia Court of Appeals seeking waivers of a bar admission rule requiring bar members to be graduates of law schools accredited by the American Bar Association ("ABA"). *Feldman*, 460 U.S. at 465-473. The District of Columbia Court of Appeals denied these petitions in *per curiam* orders. *Id.* at 468, 472. Instead of seeking Supreme Court review of these orders, the aggrieved applicants commenced actions in the United States District Court for the District of Columbia, alleging that the application of the bar admission rule excluding them from bar membership because of their failure to graduate from ABA-accredited law schools had been in violation of the Fifth Amendment[13] and the federal antitrust laws. *Id.* The District Court dismissed both actions for

<hr />

[13]The Due Process Clause of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST., AMEND. V. The protection from federal encroachment afforded to an individual under this constitutional provision is not materially different from the protection from state encroachment afforded to an individual under the Due Process Clause of the Fourteenth Amendment. *Kutschbach v. Davies*, 885 F.Supp. 1079, 1090-1091 (S.D.Ohio 1995), citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991). Although the Fifth Amendment does not contain its own equal

lack of subject-matter jurisdiction. *Id.* at 470-473. Both applicants appealed to the United States Court of Appeals for the District of Columbia Circuit. *Id.* at 474. Although the cases were not consolidated, they were disposed of in a single opinion because of the identical nature of the legal issues involved. *Id.* at 474, n. 10. The Court of Appeals affirmed the District Court's dismissal of the antitrust claims on the ground that they were insubstantial. *Feldman v. Gardner*, 661 F.2d 1295, 1298 (D.C.Cir. 1981). Nevertheless, it reversed the dismissal of the Fifth Amendment claims on the ground that the District of Columbia Court of Appeals' denials of the waiver petitions had not constituted judicial actions. *Id.* The case ultimately reached the Supreme Court.

Speaking through Justice Brennan, the Supreme Court held that the District of Columbia Court of Appeals' issuance of *per curiam* orders denying the waiver petitions had constituted judicial actions even though they had not assumed "the form commonly associated with judicial proceedings." *Feldman*, 460 U.S. at 482. It was determined that "the nature and effect" of the proceedings, rather than the "form" of the proceedings, was dispositive of the issue. *Id.* at 482, quoting *In Re Summers*, 325 U.S. 561, 567 (1945). In making this determination, the Supreme Court relied on the following language from its prior decision in *In Re Summers*, 325 U.S. 561 (1945):

> Where relief is thus sought in a state court against the action of a
> committee, appointed to advise the court, and the court takes cognizance of the

---

protection clause, the Supreme Court has construed the Due Process Clause to prohibit some forms of arbitrary discrimination that would be prohibited to state actors under the Equal Protection Clause of the Fourteenth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 498-500 (1954). For this reason, the Due Process Clause of the Fifth Amendment has its own "equal protection component." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Consequently, individuals aggrieved by federal actors can invoke the Due Process Clause of the Fifth Amendment under circumstances where they could have invoked the Due Process and Equal Protection Clauses of the Fourteenth Amendment had they been aggrieved by state actors.

> complaint without requiring the appearance of the committee or its members, we
> think the consideration of the petition by the Supreme Court, the body which has
> authority itself by its own act to give the relief sought, makes the proceeding
> adversary in the sense of a true case or controversy.
>
> > A claim of a present right to admission to the bar of a state and a denial of
> that right is a controversy.  When the claim is made in a state court and a denial of
> the right is made by judicial order, it is a case which may be reviewed under
> Article III of the Constitution when federal questions are raised and proper steps
> taken to that end, in this Court.

*In Re Summers*, 325 U.S. at 567-569 (footnote omitted).  Following this line of reasoning, the

Supreme Court concluded that the "proceedings" which had been conducted before the District

of Columbia Court of Appeals had been "judicial" rather than "legislative," "ministerial," or

"administrative."  *Feldman*, 460 U.S. at 479.

The question of whether the actions were jurisdictionally barred was more complicated.

In order to ascertain the extent to which adjudicatory jurisdiction over the actions could be

lawfully exercised, the Supreme Court turned to the reasoning employed by the United States

Court of Appeals for the Tenth Circuit in *Doe v. Pringle*, 550 F.2d 596 (10th Cir. 1976).  In *Doe*,

the Court of Appeals recognized a distinction between "a constitutional challenge to [a] state's

general rules and regulations governing admission" to the bar and "a claim, based on

constitutional or other grounds, that the state has unlawfully denied a particular applicant

admission."  *Doe*, 550 F.2d at 597.  The former type of claim was deemed to be a proper basis for

a district court's exercise of "original jurisdiction," while the latter type of claim was deemed

only to be a proper basis for the Supreme Court's exercise of "appellate jurisdiction" under §

1257.  *Id.* at 599.  The Court of Appeals explained:

> We concur in the district court's finding that it is without subject matter
> jurisdiction to review a final order of the Colorado Supreme Court denying *a*

*particular application for admission* to the Colorado Bar. This rule applies even though, as here, the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights. The Court did not err in distinguishing the above rule from the rule that a federal district court may exercise jurisdiction in relation to review of alleged federal constitutional due process or equal protection deprivations in the state's adoption and/or administration of general rules and regulations governing admission.

*Id.* at 599 (emphasis in original). Adopting the rationale articulated in *Doe*, the Supreme Court made the following observations in *Feldman*:

Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding. Instead, the district court may simply be asked to assess the validity of a rule promulgated in a nonjudicial proceeding. If this is the case, the district court is not reviewing a state-court judicial decision. In this regard, 28 U.S.C. § 1257 does not act as a bar to the district court's consideration of the case and because the proceedings giving rise to the rule are nonjudicial the policies prohibiting United States district court review of final state-court judgments are not implicated. United States district courts, therefore, have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court. 28 U.S.C. § 1257.

*Feldman*, 460 U.S. at 486. In a footnote, the Supreme Court noted that a United States district court would "in essence" be called upon to review a state court decision if the constitutional claims presented to the district court were "inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar." *Id.* at 482, n. 16.

The claims advanced by the bar applicants in *Feldman* were partially barred under this

standard.  The Supreme Court held that, to the extent that the applicants were alleging that the District of Columbia Court of Appeals had acted arbitrarily and capriciously in denying their petitions for waiver from the requirement that all bar members be graduates of ABA-accredited law schools, their claims were "inextricably intertwined" with the judicial actions taken by the Court of Appeals and, hence, jurisdictionally barred.  *Id.* at 486-487.  On the other hand, the Supreme Court held that, to the extent that the applicants were alleging that the bar admission rule was unconstitutional because it created an "irrebuttable presumption" that only graduates of ABA-accredited law schools were fit to practice law, the District Court had jurisdiction to consider their claims.  *Id.* at 487.  No opinion was expressed as to whether the doctrine of *res judicata* would foreclose the litigation of these claims.  *Id.* at 487-488.

*Feldman* compels the conclusion that the orders of the Pennsylvania Supreme Court disbarring Steinberg on consent and denying his motion to withdraw statement of resignation constituted judicial acts.  *Id.* at 476-482.  Steinberg attempts to distinguish *Feldman* from the present case by arguing that the actions taken by the Pennsylvania Supreme Court were "ministerial" rather than "judicial."  (Docket No. 35 at 20).  In support of his argument, he relies on the language of Rule 215(b), which provides that, upon receipt of a verified statement of resignation from an attorney, "the [Disciplinary] Board shall file it with the Supreme Court and the Court *shall* enter an order disbarring the attorney on consent."  PA.R.D.E. 215(b)(emphasis added).  This argument is unpersuasive.  Even if it is assumed that Rule 215(b) *required* the Pennsylvania Supreme Court to enter an order disbarring Steinberg on consent without inquiring as to whether his verified statement of resignation had been "voluntarily" executed, an order does not cease to be judicial in nature merely because it is the product of a mandatory command.  If it

were otherwise, legions of orders typically entered by courts in various situations would have to be characterized as "nonjudicial." *United States v. Monsanto*, 491 U.S. 600, 607 (1989); *United States v. Moten*, 551 F.3d 763, 767 (8th Cir. 2008); *Thompson v. Veach*, 501 F.3d 832, 836 (7th Cir. 2007); *England v. England*, 234 F.3d 268, 270-271 (5th Cir. 2000); *Hines v. Graham*, 320 F.Supp.2d 511, 525-526 (N.D.Tex. 2004). The "judicial" nature of an adjudicatory act does not depend on whether the act is the product of reasoned discretion or statutory constraint. *United States v. Jones*, 495 F.3d 274, 277 (6th Cir. 2007)("The statute calls for a mandatory ("shall order") competency hearing, and there was no room for a *judicial* shortcut.")(emphasis added). Therefore, Steinberg cannot escape the fact that the orders issued by the Pennsylvania Supreme Court on December 30, 3008, were judicial in nature.

The inquiry, of course, does not end there. It remains to be determined whether the *Rooker-Feldman* doctrine deprives this Court of subject-matter jurisdiction to entertain Steinberg's claims. Throughout the course of this litigation, the respondents have consistently argued that *Feldman* is directly controlling in this case. (Docket No. 30 at 10; Docket No. 35-2 at 17-18). The Court finds this argument to be persuasive. Nevertheless, *Feldman*'s direct application in this case is a double-edged sword. In *Feldman*, the Supreme Court found only *some* of the relevant claims to be jurisdictionally barred. The applicants were barred from pursuing their contentions that the District of Columbia Court of Appeals had acted arbitrarily and capriciously in denying their petitions for waivers, but they were nevertheless permitted to pursue constitutional challenges against the District of Columbia's "irrebuttable presumption" that only graduates of ABA-accredited law schools were competent to practice law. *Feldman*, 460 U.S. at 486-487. The mere fact that *some* of the relief sought by a litigant is precluded by the

23

*Rooker-Feldman* doctrine does not necessarily mean that a district court lacks jurisdiction over

his or her entire case. *Marran v. Marran*, 376 F.3d 143, 153 (3d Cir. 2004)("Despite the fact that

Librett and Rachel attempted to seek *relief* prohibited by Rooker-Feldman, the § 1983 claim *itself*

is not barred by Rooker-Feldman.")(emphasis added). For this reason, a more detailed analysis is

required.

The respondents rely heavily on the decision of the United States Court of Appeals for the

Third Circuit in *Stern v. Nix*, 840 F.2d 208 (3d Cir. 1988).[14] (Docket No. 30 at 6-7). *Stern*

involved a constitutional challenge to a procedure permitting the Pennsylvania Supreme Court to

disbar an attorney, despite a recommendation by the Disciplinary Board or its Hearing

Committee for a lesser form of punishment, without providing him or her with an opportunity for

an evidentiary hearing before the Pennsylvania Supreme Court. *Stern*, 840 F.2d at 212. The

aggrieved attorney in that case was disbarred by the Pennsylvania Supreme Court even though

the Disciplinary Board had recommended the less severe sanction of public censure. *Id.* at 210.

In accordance with Rule of Disciplinary Enforcement 208(e)(3), he was given an opportunity for

an oral argument, but no opportunity for an evidentiary hearing. PA.R.D.E. 208(e)(3). He

commenced an action against the individual Justices of the Pennsylvania Supreme Court in the

United States District Court for the Eastern District of Pennsylvania, seeking to enjoin the

Pennsylvania Supreme Court Justices from disbarring an attorney, despite a contrary

recommendation of the Disciplinary Board, without first providing him or her with an

opportunity for an evidentiary hearing before the Pennsylvania Supreme Court. *Stern*, 840 F.2d

---

[14]*Stern v. Nix*, 840 F.2d 208 (3d Cir. 1988), was decided by a panel of judges from the United States Court
of Appeals for the Second Circuit sitting by designation pursuant to 28 U.S.C. §§ 291(a) and 294(d). All members
of the United States Court of Appeals for the Third Circuit had recused themselves.

at 212. The constitutional basis for his action was the Due Process Clause of the Fourteenth

Amendment. *Id.* at 209. The case ultimately reached the United States Court of Appeals for the

Third Circuit, which held that the exercise of federal adjudicatory jurisdiction was precluded by

the *Rooker-Feldman* doctrine. *Id.* at 212-213. Although the complaint had been framed as a

general challenge to the applicable Rules of Disciplinary Enforcement, the Court of Appeals

viewed the filing of the complaint as a "skillful attempt to mask the true purpose of the action,"

which was to reverse the decision of the Pennsylvania Supreme Court. *Id.* at 212.

     *Stern* was distinguished in *Centifanti v. Nix*, 865 F.2d 1422, 1424-1430 (3d Cir. 1989), in

which the Court of Appeals permitted a suspended attorney who had been denied reinstatement

by the Pennsylvania Supreme Court without an opportunity to file a brief or participate in an

evidentiary hearing to seek prospective relief against the enforcement of the applicable Rules of

Disciplinary Enforcement. Speaking through Judge Cowen, the Court of Appeals explained:

> In contrast to the injunction sought in *Stern*, Centifanti seeks to enjoin the Justices
> to direct that they "afford *plaintiff and all similarly situated future petitioners for
> reinstatement* Due Process prior to the denial of their petitions." App. at 19-20
> (emphasis added). Centifanti argues, and we agree, that the complaint's joint
> reference to Centifanti "and all similarly situated future petitioners" indicates that
> he seeks *prospective* relief. He does not request the district court to interfere in
> any way with the decision of the Pennsylvania Supreme Court to deny his petition,
> or with the enforcement of that decision. Instead, he requests an injunction
> ordering the state court to correct alleged constitutional defects in the procedural
> rules applied in reaching that decision. Although such relief, if granted, could
> affect *future* decisions of the state supreme court, it would not require review of a
> past decision. Thus, we hold that the district court has subject matter jurisdiction
> over the due process claim.

*Centifanti*, 865 F.2d at 1430 (emphasis in original). The Court of Appeals' decision in *Centifanti*

was consistent with the Supreme Court's holding in *Feldman* that general challenges to bar

admission or disciplinary rules are not "inextricably intertwined" with underlying state-court decisions applying those rules. *Feldman*, 460 U.S. at 482-487; *Centifanti*, 865 F.2d at 1429-1430.

Admittedly, it is difficult to distinguish *Stern* from *Centifanti*. Perhaps the difference between the two decisions lied in the expectation that the aggrieved individual in *Centifanti* would file a future petition for reinstatement, whereas the aggrieved individual in *Stern* was unlikely to reap any *prospective* benefit from a favorable adjudication.[15] *Centifanti*, 865 F.2d at 1429-1430; *Stern*, 840 F.2d at 212-213. Nevertheless, nothing in *Stern* indicates that the Court of Appeals was placing dispositive weight on the fact that the aggrieved individual was not likely to benefit from a prospective decision holding that the challenged procedure was unconstitutional. Instead, the Court of Appeals appeared to be concerned with the fact that a determination in favor of the aggrieved individual would inevitably require a corresponding determination that the Pennsylvania Supreme Court's decision disbarring him had been wrong. *Stern*, 840 F.2d at 212-213.

The rationale employed in *Stern* has not been followed by federal courts in more recent decisions.[16] In *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993), the

---

[15]Even though the aggrieved attorney in *Centifanti v. Nix*, 865 F.2d 1422 (3d Cir. 1989), was presumably able to benefit from a decision granting him prospective relief, the United States Court of Appeals for the Third Circuit determined that his standing was based on the Pennsylvania Supreme Court's prior denial of his petition for reinstatement. *Centifanti*, 865 F.2d at 1433 ("Centifanti did not have standing to challenge the rules until he had suffered or was about to suffer an actual injury. This did not occur until the Pennsylvania Supreme Court denied his petition in July of 1986, or at least until the hearing committee and the Disciplinary Board recommended his reinstatement.").

[16]The Court is unmoved by the respondents' citation to *Hawkins v. Supreme Court of New Jersey*, 174 Fed.Appx. 683 (3d Cir. 2006). (Docket No. 30 at 8). That case involved an attorney who brought frivolous claims against state officials for a series of allegedly illegal actions taken by those officials in connection with the attorney's representation of clients during the course of a five-year period. *Hawkins*, 174 Fed.Appx. at 683-684. No specific rule or procedure was challenged. *Id.* at 684. *Hawkins* is not even remotely relevant to the legal issues presented in

United States Court of Appeals for the Seventh Circuit indicated that the *Rooker-Feldman* doctrine does not bar an action merely because a decision in favor of the plaintiff would "den[y] a legal conclusion that a state court has reached in a case to which he [or she] was a party." This line of reasoning has recently been referenced by both the United States Supreme Court and the United States Court of Appeals for the Third Circuit. *Exxon Mobil*, 544 U.S. at 293; *Turner*, 449 F.3d at 547-548. Consequently, the *Rooker-Feldman* doctrine is not applicable merely because a plaintiff cannot succeed in a subsequently-commenced federal-court action without obtaining an adjudication that contradicts a determination made by a state court in a previously-litigated state-court proceeding. *Turner*, 449 F.3d at 547 ("Though Turner's district court complaint undoubtedly overlaps her adjudicated state-court claims, and is based on the same operative facts, this overlap does not mean that the *Rooker-Feldman* doctrine is applicable here.").

The correct standard for distinguishing between cases in which the *Rooker-Feldman* doctrine operates as a jurisdictional bar and cases in which it does not can be gleaned from the decision of the United States Court of Appeals for the Tenth Circuit in *Razatos v. Colorado Supreme Court*, 746 F.2d 1429 (10th Cir. 1984), cert. denied, 471 U.S. 1016 (1985). In *Razatos*, the Court of Appeals distinguished a challenge to a rule *as applied in a particular case* from a challenge to a rule *as promulgated*. *Razatos*, 746 F.2d at 1433-1434. The former type of claim is barred by the *Rooker-Feldman* doctrine under these circumstances, whereas the latter type of claim is not. *Id.* In *Centifanti*, the United States Court of Appeals for the Third Circuit relied on *Razatos* to articulate the proper standard for determining whether the *Rooker-Feldman* doctrine

---

this case.

was applicable.  *Centifanti*, 865 F.2d at 1429, n. 8.  In *White v. Judicial Inquiry & Review Board of Pennsylvania*, 744 F.Supp. 658, 670, n. 5 (E.D.Pa. 1990), the United States District Court for the Eastern District of Pennsylvania appears to have viewed *Centifanti* through the prism of *Razatos*.  Consequently, the Court is convinced that *Razatos* provides the applicable framework for decisionmaking in this case.

Under the *Razatos* framework, Steinberg's claims under the Equal Protection Clause are clearly barred by the *Rooker-Feldman* doctrine.  Those claims are based on the alleged inequity between the discipline imposed on Steinberg (i.e., disbarment) and the lesser forms of discipline imposed on other attorneys for similar or worse misconduct.  (Docket No. 21, ¶¶ 115-133).  Such claims would require the Court to determine the constitutionality of Steinberg's treatment in his particular case.  *Razatos*, 746 F.2d at 1433-1434.  They could not be adjudicated solely by reference to a particular rule *as promulgated*.  *Id.*  Accordingly, the Court lacks subject-matter jurisdiction to entertain Steinberg's Equal Protection Clause claims.[17]

Steinberg's Due Process Clause claims require a more searching inquiry.  In his third verified complaint in equity, Steinberg avers that Rule 215(b) requires the Pennsylvania Supreme Court, upon receipt of a verified statement of resignation, to enter an order disbarring the

---

[17]Because jurisdiction over Steinberg's Equal Protection Clause claims is barred by the *Rooker-Feldman* doctrine, the Court has no occasion to consider whether Steinberg properly alleges a violation of the Equal Protection Clause.  Nevertheless, it is difficult to fathom how he could succeed under the Equal Protection Clause even if the *Rooker-Feldman* doctrine were inapplicable.  The attorneys who received lesser forms of discipline did not sign verified statements of resignation pursuant to Rule 215(a).  Steinberg was disbarred not because the Pennsylvania Supreme Court imposed disbarment on him, but rather because he signed a verified statement of resignation.  Even if it is assumed (as it must be assumed at this stage) that Steinberg's signature was not "voluntarily" procured, Steinberg was not similarly situated with the attorneys who decided to contest the disciplinary complaints which had been lodged against them.  *Sampson v. Town of Salisbury*, 441 F.Supp.2d 271, 281-282 (D.Mass. 2006).  An attorney who agrees to be disbarred (voluntarily or involuntarily) cannot expect to receive a punishment less severe than disbarment, regardless of whether his or her misconduct would have resulted in disbarment if the relevant disciplinary complaint had been contested.

28

attorney referenced therein on consent regardless of whether he or she had "voluntarily" agreed to resign.  (Docket No. 21 at ¶¶ 17-19).  Rule 215(a) clearly contemplates "voluntary" resignations rather than resignations obtained by coercion, fraud, or duress.  PA.R.D.E. 215(a).  Nevertheless, Steinberg contends that once a verified statement of resignation is presented to the Pennsylvania Supreme Court, Rule 215(b) mandates the entry of an order of disbarment.  PA.R.D.E. 215(b)("Upon receipt of the required statement, the Board shall file it with the Supreme Court and the Court *shall* enter an order disbarring the attorney on consent.")(emphasis added).  According to Steinberg's interpretation of Rule 215(b), a disbarment order would presumably have to be entered even if a verified statement of resignation were forged.  He essentially argues that the *filing* of a verified statement of resignation creates an irrebuttable presumption that the attorney named therein has, in fact, decided to resign *voluntarily*, leaving no opportunity for the attorney to demonstrate otherwise.

The challenge to Rule 215(b)'s "irrebuttable presumption" brought by Steinberg can be adjudicated without reference to the Pennsylvania Supreme Court's orders disbarring him on consent and denying his motion to withdraw statement of resignation.  *Feldman*, 460 U.S. at 487 ("The respondents' claims that the rule is unconstitutional because it creates an irrebuttable presumption that only graduates of accredited law schools are fit to practice law, discriminates against those who have obtained equivalent legal training by other means, and impermissibly delegates the District of Columbia Court of Appeals' power to regulate the bar to the American Bar Association, do not require review of a judicial decision in a particular case.").  Steinberg challenges not simply the Pennsylvania Supreme Court's application of Rule 215(b) to him, but

rather Rule 215(b)'s irrebuttable presumption *as promulgated*.[18]  *Razatos*, 746 F.2d at 1433-1434.  It is of no moment that Steinberg's true *motive* for challenging Rule 215(b) may be to reverse the effects of the Pennsylvania Supreme Court's orders of December 30, 2008.  *Collins v. Kansas*, 174 F.Supp.2d 1195, 1198 (D.Kan. 2001).  Moreover, Steinberg's challenge to Rule 215(b) cannot be properly characterized as "inextricably intertwined" with the Pennsylvania Supreme Court's orders relating to him merely because the resolution of this action may require some consideration of the merits of the Pennsylvania Supreme Court's decisions.  *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1170 (10th Cir. 1998).

The *Rooker-Feldman* doctrine does not deprive this Court of subject-matter jurisdiction to entertain Steinberg's general challenge to Rule 215(b) under the Due Process Clause.  It does, however, preclude Steinberg from seeking retrospective relief.  *Centifanti*, 865 F.2d at 1430 ("He does not request the district court to interfere in any way with the decision of the Pennsylvania Supreme Court to deny his petition, or with the enforcement of that decision.").  While the *Rooker-Feldman* doctrine does not completely bar Steinberg's Due Process Clause claims, such claims remain viable only insofar as they seek relief that is purely prospective.[19]

**B.  The Eleventh Amendment and the Meaning of the Word "Person" in 42 U.S.C. § 1983[20]**

---

[18]In making this observation, the Court does not mean to suggest that it is adopting Steinberg's construction of Rule 215(b) as conclusive.  Whether Steinberg properly construes Rule 215(b) relates to the merits of his claims, since it is relevant to the underlying question of whether Rule 215(b) is unconstitutional.  It has nothing to do with whether the *Rooker-Feldman* doctrine deprives the Court of subject-matter jurisdiction to entertain these claims.

[19]The separate issue of Steinberg's standing to seek prospective relief will be addressed in a later portion of this opinion.

[20]The scope of the Eleventh Amendment and the meaning of the word "person" in 42 U.S.C. § 1983 are separate issues.  In the present context, however, these two issues are substantially interrelated.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 66-67 (1989).  Consequently, the Court will address them together.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST., AMEND. XI. Despite the narrowness of its express terms, the Eleventh Amendment has been construed by the Supreme Court "to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms." *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991). This presupposition is based on the understanding that "the States entered the federal system with their sovereignty intact," that "[t]he Judicial power of the United States" is limited by this sovereignty, and that a State will not be subject to suits in federal court brought by individuals unless it has consented to such suits either expressly or in the "plan of the convention."[21] *Id.* Pennsylvania has not statutorily waived its Eleventh Amendment immunity. 42 PA. CONS. STAT. § 8521(b). The respondents contend that Steinberg's claims are barred by the Eleventh Amendment. (Docket No. 30 at 12-14).

When Congress validly acts pursuant to its authority to enforce the substantive provisions of the Fourteenth Amendment, it may abrogate the States' Eleventh Amendment immunity and subject them to suits brought by private individuals.[22] *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456

---

[21]It is clear that the States did not consent to suits of the type brought by Steinberg in the "plan of the convention." Such consent is narrowly defined. For instance, the Supreme Court has observed that, "[i]n ratifying the Constitution, the States consented to suits brought by other States or by the Federal Government." *Alden v. Maine*, 527 U.S. 706, 755 (1999). The Supreme Court has also held that, "[i]n ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Central Virginia Community College v. Katz*, 546 U.S. 356, 378 (2006). The States did not consent to suits brought by private individuals when they ratified the Constitution. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996).

[22]Section 5 of the Fourteenth Amendment provides:
The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.
U.S. CONST., AMEND. XIV, § 5.

(1976).  Nonetheless, "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the [relevant] statute."  *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985).

Steinberg's constitutional claims are brought pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.  Since § 1983 does not include language unambiguously abrogating the States' Eleventh Amendment immunity, it has not been construed as such an abrogation.  *Quern v. Jordan*, 440 U.S. 332, 342-343 (1979).  Because § 1983 does not abrogate the States' Eleventh Amendment immunity, a State is not considered to be a "person" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 60-71 (1989).

A suit against a state official in his or her official capacity is, in all respects other than name, a suit against the State.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  For this reason, a state official sued in his or her official capacity is not a "person" within the meaning of § 1983 when the relief sought by the plaintiff is monetary damages.[23]  *Will*, 491 U.S. at 60-71.

_____

[23]A state official can be held personally liable under § 1983 for his or her official actions.  *Hafer v. Melo*, 502 U.S. 21, 22-31 (1991).  A state official sued in his or her personal capacity is a "person" within the meaning of § 1983, and the Eleventh Amendment does not bar such personal-capacity suits.  *Id.* at 31.  In determining whether an action is properly characterized as an official-capacity suit or a personal-capacity suit, a court must look to the capacity in which the individual has been *sued*, not the "capacity" in which he or she *acted*.  Personal-capacity

Nevertheless, when a petitioner seeks only prospective relief, a state official is a "person" for purposes of § 1983, since official-capacity actions against state officials for prospective relief are not treated as actions against the State. *Id.* at 71, n. 10. This principle is rooted in *Ex Parte Young*, 209 U.S. 123 (1908), in which the Supreme Court declared:

> The answer to all this is the same as made in every case where an official claims to be acting under the authority of the State. The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional. If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

*Ex Parte Young*, 209 U.S. at 159-160. Pursuant to the foregoing analysis, the extent to which the Eleventh Amendment bars an action often depends on the relief requested by the individual bringing that action.

As an arm of the Commonwealth of Pennsylvania, the Pennsylvania Supreme Court is entitled to Eleventh Amendment immunity. *Benn v. First Judicial District of Pennsylvania*, 426 F.3d 233, 241 (3d Cir. 2005). The United States Supreme Court has declared that, with respect to a suit against a State, the nature of the relief sought by the plaintiff has no bearing on whether

---

suits seek to impose individual liability upon the state officials named as defendants. *Id.* at 25. Official-capacity suits, on the other hand, are really suits against the State for which the defendants perform official duties. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). While an award of damages obtained in a personal-capacity suit can be executed only against the defendant's personal assets, an award of damages obtained in an official-capacity suit can be executed only against the governmental entity that employs the defendant. *Id.* at 166.

the suit is barred by the Eleventh Amendment. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996). In addition, the Pennsylvania Supreme Court is not a "person" within the meaning of § 1983. *Callahan v. City of Philadelphia*, 207 F.3d 668, 674 (3d Cir. 2000). Consequently, Steinberg's claims against the Pennsylvania Supreme Court must be dismissed in their entirety.

The respondents contend that the individual Justices, who are sued in their official capacities, are entitled to Eleventh Amendment immunity, and that they are not "persons" within the meaning of § 1983. (Docket No. 30 at 13-14). Steinberg's claims against the individual Justices are obviously official-capacity claims, since the sought-after injunctive relief is properly assertable only in the official-capacity context. *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989)("Moreover, the equitable relief Feit requests–a declaration that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future–can be obtained only from the defendants in their official capacities, not as private individuals."). The respondents are incorrect, however, in their belief that such claims are barred by the Eleventh Amendment, or in their alternative belief that such claims cannot be pursued under § 1983. The Supreme Court has made it clear that state officials sued in their official capacities for prospective relief are "persons" for purposes of § 1983, and that such suits are not treated as suits against the State for purposes of the Eleventh Amendment. *Will*, 491 U.S. at 71, n. 10. Consequently, the individual Justices are proper respondents in this equitable action, and the Eleventh Amendment raises no jurisdictional barrier to this Court's subject-matter jurisdiction to entertain the claims against them.

**C.     *Res Judicata***

The respondents contend that Steinberg's claims are barred by the doctrine of *res*

*judicata*. (Docket No. 30 at 12). Generally speaking, *res judicata* precludes parties to litigation from relitigating matters that have already been resolved by a court of competent jurisdiction. *Turner*, 449 F.3d at 548-551. This doctrine is firmly embedded within the American legal tradition.

The Full Faith and Credit Clause of the United States Constitution incorporates the doctrines of *res judicata* and collateral estoppel as the law of our Union.[24] *Riley v. New York Trust Co.*, 315 U.S. 343, 349 (1942). That provision, however, only limits the prerogatives of "each State." U.S. CONST., ART. IV, § 1. By its own terms, the Constitution does not impose the doctrine of *res judicata* on the Federal Judiciary. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 483, n. 24 (1982). Nevertheless, when a judgment is rendered by a state tribunal, federal courts are statutorily bound to accord that judgment *res judicata* and collateral estoppel effect by virtue of 28 U.S.C. § 1738.[25] "This statute has long been understood to encompass the

---

[24]The Full Faith and Credit Clause provides:
Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State; And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.
U.S. CONST., ART. IV, § 1.

[25]The Full Faith and Credit Statute provides:
The Acts of legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
28 U.S.C. § 1738.

doctrines of *res judicata*, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'"[26] *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336 (2005)(emphasis added). Consequently, a federal court must give a judgment rendered by a state court the same preclusive effect that it would be accorded by another state tribunal. *Exxon Mobil*, 544 U.S. at 293.

The respondents argue that Steinberg is precluded from litigating his claims in this Court because they have already been rejected by the Pennsylvania Supreme Court. (Docket No. 30 at 12). This argument remains viable despite the Court's determination that Steinberg's challenge to Rule 215(b) is not barred by the *Rooker-Feldman* doctrine. After all, in *Feldman*, the Supreme Court declined to consider whether the doctrine of *res judicata* would foreclose the challenges brought by the aggrieved individuals. *Feldman*, 460 U.S. at 487-488. Nevertheless, unlike jurisdictional defects predicated on the *Rooker-Feldman* doctrine, *res judicata* is an affirmative defense. *Exxon Mobil*, 544 U.S. at 293. The respondents can benefit from such a defense only by establishing its applicability.

"Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 466 (2006)(emphasis in original). Whether the Pennsylvania Supreme Court's orders preclude Steinberg's claims depends on whether such orders would preclude Steinberg's claims if he had brought them in a Pennsylvania court. *Parkview Associates Partnership v. City of Lebanon*, 225 F.3d 321, 328-329

---

[26]"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980)(citations omitted).

(3d Cir. 2000). The interesting thing about this inquiry is that the Court's earlier determination that the Pennsylvania Supreme Court's orders were "judicial" acts for purposes of the *Rooker-Feldman* doctrine does not control the question of whether those orders were "judicial" acts for purposes of *res judicata*. *Feldman*, 460 U.S. at 477-478 ("In considering this contention, we conceded that the state-court proceedings might not have been judicial under state law and that the denial of the petitioner's application for admission to the bar was treated 'as a ministerial act which is performed by virtue of the judicial power, such as the appointment of a clerk or bailiff or the specification of the requirements of eligibility or the course of study for applicants for admission to the bar, rather than a judicial proceeding.'"), quoting *In Re Summers*, 325 U.S. 561, 566 (1945). While the nature of the proceedings for purposes of the *Rooker-Feldman* doctrine raises a question of federal law, the nature of the proceedings for purposes of *res judicata* raises a question of state law. *Feldman*, 460 U.S. at 477-478; *Parkview Associates*, 225 F.3d at 328-329. The respondents cite to no authority indicating that the Pennsylvania courts accord *res judicata* or collateral estoppel effect to judgments rendered in attorney admission and disciplinary proceedings. (Docket No. 30 at 12). Although the law on this matter is not entirely clear, there is some indication that such determinations may *not* be entitled to preclusive effect under Pennsylvania law. *In Re Iulo*, 766 A.2d 335, 337-338 (Pa. 2001).

In *Centifanti*, the United States Court of Appeals for the Third Circuit determined that the Pennsylvania Supreme Court's judgment did not preclude the aggrieved individual from litigating his claims in federal court because he had not had "a realistic opportunity to fully and fairly litigate" the relevant issues. *Centifanti*, 865 F.2d at 1433. Based on the present state of the record, the Court cannot say that Steinberg had "a realistic opportunity to fully and fairly litigate"

his constitutional claims before the Pennsylvania Supreme Court. Steinberg avers that the Pennsylvania Supreme Court approved his verified statement of resignation on a "ministerial" basis, without entertaining arguments as to whether it had been voluntarily executed. (Docket No. 21 at ¶ 37). Attorneys who admit to misconduct by way of stipulations are apparently permitted to contest the voluntariness of such admissions under certain circumstances. *Office of Disciplinary Counsel v. Rainone*, 911 A.2d 920, 929 (Pa. 2006). Nevertheless, it does not necessarily follow that an attorney who has signed a verified statement of resignation is afforded a fair opportunity under Pennsylvania law to contest the voluntariness of that signature. In fact, it appears that no such opportunity is available. *Office of Disciplinary Counsel v. Jepsen*, 787 A.2d 420, 425-426 (Pa. 2002)("Respondent's remaining assertions in support of her petition to vacate disbarment do not entitle her to relief. The Rules of Disciplinary Enforcement do not provide for the revocation of a verified statement of resignation that has been accepted by this Court.").

In light of the foregoing analysis, the respondents have failed to establish their affirmative defense of *res judicata*. Steinberg's challenge to Rule 215(b) cannot be dismissed pursuant to § 1738.

**D.     Standing to Seek Prospective Relief**

Having determined that Steinberg's prospective challenge to Rule 215(b) is not barred by the *Rooker-Feldman* doctrine, the Eleventh Amendment or § 1738, the Court must determine whether he can seek prospective relief in the form of an injunction. As noted earlier, the *Rooker-Feldman* doctrine bars him from seeking relief that would directly interfere with the enforcement of the Pennsylvania Supreme Court's orders of December 30, 2008. *Centifanti*, 865 F.2d at 1430. Thus, the only remaining question is whether he can obtain *prospective* relief. For the

following reasons, he cannot.

As an Article III tribunal established by Congress, this Court exercises "[t]he judicial Power of the United States." U.S. CONST., ART. III, § 1. This power may be exercised only in a "Case" or "Controversy" within the meaning of Article III. In order for an action to constitute a "Case" or "Controversy," the person bringing the action must have Article III "standing" to do so. *Flast v. Cohen*, 392 U.S. 83, 95 (1968). In order for a plaintiff to have standing, he or she must establish: (1) that he or she has suffered an "injury in fact" (i.e., an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, and not merely conjectural or hypothetical; (2) that there is a causal connection between his or her injury and the conduct complained of; and (3) that it is *likely* that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). In this case, there is no question that Steinberg satisfies the first two prongs of this test. The critical question is whether a merits-based decision favorable to him would likely redress his injury.

Steinberg must establish standing separately for each form of relief that he seeks. *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 138, n. 5 (3d Cir. 2009). He cannot establish the existence of standing to seek injunctive relief merely by showing that he has suffered a past injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 97-113 (1983). Because Steinberg's standing to seek injunctive relief relates to this Court's subject-matter jurisdiction, it must be addressed *sua sponte*. *Stewart v. Lubbock County*, 767 F.2d 153, 155, n. 3 (5th Cir. 1985); *Mahorner v. Bush*, 224 F.Supp.2d 48, 53 (D.D.C. 2002).

In *Centifanti*, the United States Court of Appeals for the Third Circuit held that the aggrieved attorney's standing to sue had been triggered by the Pennsylvania Supreme Court's

denial of his petition for reinstatement. *Centifanti*, 865 F.2d at 1433. The denial of the petition had satisfied the "injury" prong of the test. Nevertheless, the attorney evidently had standing to seek prospective relief because he was including himself within a class of "future petitioners" for reinstatement. *Id.* at 1430 ("Centifanti argues, and we agree, that the complaint's joint reference to Centifanti 'and all similarly situated future petitioners' indicates that he seeks *prospective* relief.")(emphasis in original). The *Rooker-Feldman* doctrine precluded him from seeking retrospective relief designed to obviate the harm caused by the denial of his prior petition. *Id.* ("Although such relief, if granted, could affect *future* decisions of the state supreme court, it would not require review of a past decision.")(emphasis in original). He sought only relief pertaining to *future* petitions for reinstatement. Similarly, the bar applicants in *Feldman* were seeking prospective relief in the form of orders permitting them to sit for the bar examination in the District of Columbia despite the fact that they had not graduated from ABA-accredited law schools. *Feldman*, 460 U.S. at 468-473.

In the instant case, it is difficult to fathom how Steinberg could benefit from purely prospective relief. His verified motion to withdraw statement of resignation has already been denied by the Pennsylvania Supreme Court, and the *Rooker-Feldman* doctrine divests this Court of subject-matter jurisdiction to entertain requests for relief that would interfere with the enforcement of that judgment.[27] *Centifanti*, 865 F.2d at 1430. In order to have standing to seek prospective relief from the enforcement of Rule 215(b), Steinberg would have to allege that he is likely to be readmitted to the bar, submit another verified statement of resignation pursuant to

---

[27]The applicability of the *Rooker-Feldman* doctrine is a separate issue from the applicability of other doctrines concerning a federal court's subject-matter jurisdiction. *Lawrence v. Welch*, 531 F.3d 364, 370-372 (6th Cir. 2008).

Rule 215(a), and be unable to withdraw that statement because of Rule 215(b). *Gratz v.*

*Bollinger*, 539 U.S. 244, 260-261 (2003)("But whether Hamacher 'actually applied' for

admission as a transfer student is not determinative of his ability to seek injunctive relief in this

case. If Hamacher had submitted a transfer application and been rejected, he would still need to

allege an intent to apply again in order to seek prospective relief."). Having been disbarred,

Steinberg is significantly less likely than any attorney currently licensed to practice law in

Pennsylvania to submit a future Rule 215(a) statement of resignation.

   Steinberg would have had standing to seek prospective relief from the enforcement of

Rule 215(b) prior to December 30, 2008. Because the *Rooker-Feldman* doctrine independently

bars this Court from entertaining requests for relief that would disturb the Pennsylvania Supreme

Court's orders, the "Case" or "Controversy" concerning Steinberg's request for prospective relief

from Rule 215(b) became moot when those orders were entered. There is an exception to the

"mootness" doctrine for situations in which challenged actions that are "capable of repetition"

continually evade judicial review because of their inherently short duration. *Spencer v. Kemna*,

523 U.S. 1, 17 (1998). This exception, however, "applies only in exceptional situations, and

generally only where the named plaintiff can make a reasonable showing that he [or she] will

again be subjected to the alleged illegality." *Lyons*, 461 U.S. at 109. The Court acknowledges

that the challenged action (i.e., the alleged refusal of the Pennsylvania Supreme Court to consider

a request to withdraw a verified statement of resignation between the time that such a statement

is executed by an attorney and the time that an order is issued disbarring the attorney on consent)

is, "in its duration, too short to be fully litigated prior to cessation or expiration." *Rendell v.*

*Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007), quoting *Spencer*, 523 U.S. at 17. Nevertheless,

41

Steinberg cannot show (and does not allege) that there is a "reasonable expectation" that *he* "will be subject to the same action again." *Id.* For this reason, he does not have standing to seek injunctive relief against the enforcement of Rule 215(b). In essence, his request for injunctive relief is defeated by a confluence of the *Rooker-Feldman* doctrine (which prevents him from seeking retrospective relief) and Article III (which prevents him from seeking prospective relief that cannot redress his injury).

**E.    The Federal Courts Improvement Act of 1996**

Even if Steinberg did have standing to seek injunctive relief from the prospective enforcement of Rule 215(b), his request for such relief would have to be denied for another reason. As noted earlier, Steinberg's claims against the Pennsylvania Supreme Court are barred by the Eleventh Amendment regardless of the type of relief that he requests. *Seminole Tribe*, 517 U.S. at 58. Since the claims against the individual Justices for injunctive relief would surmount the Eleventh Amendment hurdle pursuant to *Ex Parte Young*, a petitioner with standing to challenge the constitutionality of Rule 215(b) would presumably be able to obtain injunctive relief against the Justices unless such relief were deemed to be barred by some form of official immunity. *Louis v. Supreme Court of Nevada*, 490 F.Supp. 1174, 1182 (D.Nev. 1980)("In fact, it has been held specifically that state judges may be enjoined against the commission of acts that violate civil rights, even though the court as an entity may not be held liable under the Civil Rights Act."). Nevertheless, under the present circumstances, Steinberg's claims for injunctive relief against the Justices are barred by § 309(c) of the Federal Courts Improvement Act ("FCIA") of 1996. Pub. L. No. 104-317, § 309(c); 110 Stat. 3847, 3853 (1996).

The United States Supreme Court has always assumed that Congress would have

42

expressly made common-law immunities inapplicable to § 1983 actions within the statutory text if it had intended to do so. *Pierson v. Ray*, 386 U.S. 547, 554-555 (1967). For this reason, the immunities that were available to state officials at common law are available to state officials who are sued under § 1983. *Kalina v. Fletcher*, 522 U.S. 118, 131-135 (1997)(Scalia, J., concurring). When judicial officers promulgate rules governing the conduct and discipline of attorneys, they act in a legislative capacity. *Exxon Mobil*, 544 U.S. at 285-286 ("But that determination did not dispose of the entire case, for in promulgating the bar admission rule, this Court said, the D.C. court had acted legislatively, not judicially."). Steinberg evidently seeks an injunction to compel the Justices of the Pennsylvania Supreme Court to promulgate rules designed to obviate the perceived unfairness of Rule 215(b). (Docket No. 21 at ¶¶ 12-15). The Justices, however, enjoy absolute immunity for actions taken in their legislative capacity. *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). This immunity bars actions against legislators regardless of whether the relief sought is legal or equitable in nature. *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 731-734 (1980). Consequently, Steinberg cannot invoke § 1983 to compel the promulgation of rules that he deems to be desirable or appropriate.

The Court has already determined that, for purposes of federal law, the Justices act in a judicial capacity when they issue orders disbarring attorneys on consent pursuant to Rule 215(b). *Feldman*, 460 U.S. at 476-482. "A judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978). "Judicial immunity cannot be overcome by allegations of bad faith or malice." *Goldhaber v. Higgins*, 576 F.Supp.2d 694, 703

(W.D.Pa. 2007).  Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction."  *Mireles v. Waco*, 502 U.S. 9, 12 (1991).  Because the Justices of the Pennsylvania Supreme Court acted in their judicial capacities, and within the sphere of their jurisdiction, when they entered orders disbarring Steinberg on consent and denying his verified motion to withdraw statement of resignation, they would be absolutely immune from a suit for monetary relief in connection with those orders.

Steinberg, of course, does not seek monetary relief.  Instead, he seeks equitable relief in the form of an injunction.[28]  In *Pulliam v. Allen*, 466 U.S. 522, 536-543 (1984), the United States Supreme Court held that the judicial immunity available under § 1983, which had its roots in the common law, did not protect a judicial officer acting in his or her judicial capacity from prospective injunctive relief.  In so holding, the Supreme Court expressly recognized the authority of Congress "to limit the injunctive relief available under § 1983 in a way that would prevent federal injunctive relief against a state judge."  *Pulliam*, 466 U.S. at 540.  Congress responded in 1996 by enacting § 309(c) of the FCIA, which amended § 1983 to provide that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  Pub. L. No. 104-317, § 309(c); 110 Stat. 3847, 3853 (1996); 42 U.S.C. § 1983.  The FCIA extended the scope of judicial immunity beyond that which had been available to judges at common law.  The respondents expressly rely on the FCIA as a basis

_____

[28]The Court acknowledges Steinberg's contention that the respondents violated the Takings Clause by refusing to refund his annual assessment fee on a *pro rata* basis.  (Docket No. 21 at ¶¶ 108-114).  That issue will be addressed later.

for arguing that Steinberg cannot obtain injunctive relief against the Justices. (Docket No. 30 at 15).

Since the enactment of the FCIA, courts have held that an individual seeking injunctive relief against a judicial officer pertaining to a judicial act must allege that a declaratory decree was violated, or that declaratory relief was unavailable, in order to overcome the judicial immunity established by that statute. *L.B. v. Town of Chester*, 232 F.Supp.2d 227, 238 (S.D.N.Y. 2002); *Kampfer v. Scullin*, 989 F.Supp. 194, 201-202 (N.D.N.Y. 1997). In his third verified complaint in equity, Steinberg does not allege that a declaratory decree was violated, or that declaratory relief was unavailable to him. (Docket No. 21). Instead, he simply argues in his brief that the actions taken by the individual Justices pursuant to Rule 215(b) were not judicial in nature. (Docket No. 35 at 32-33). The Court has already rejected that argument by holding that, at least for purposes of federal law, the Pennsylvania Supreme Court's orders disbarring Steinberg on consent and denying his verified motion to withdraw statement of resignation were adjudicatory acts. *Feldman*, 460 U.S. at 476-482. It necessarily follows that the judicial immunity available to the individual Justices under the FCIA bars Steinberg's request for injunctive relief. Thus, even if Steinberg were able to establish a "Case" or "Controversy" under Article III with respect to his request for prospective relief, his request for an injunction could not be granted.

## F.     Mandamus Relief

Steinberg seeks a writ of mandamus to compel the Pennsylvania Supreme Court to vacate its orders of December 30, 2008, disbarring him on consent and denying his verified motion to withdraw statement of resignation, and to effectuate the implementation of "a constitutionally-

sound practice relative to attorneys who submit letters of resignation and then wish to withdraw them." (Docket No. 34 at 7). As discussed earlier, the *Rooker-Feldman* doctrine precludes this Court from entertaining a request for such retrospective relief. *Centifanti*, 865 F.2d at 1429-1430. Even if the *Rooker-Feldman* doctrine were not applicable, however, this Court could not grant Steinberg the mandamus relief that he seeks.

The respondents point out that Federal Rule of Civil Procedure 81(b) purported to abolish the writ of mandamus. (Docket No. 28 at 2). Steinberg responds by arguing that he can seek a writ of mandamus pursuant to the second sentence of Rule 81(b), which provides that relief "previously available" through a writ of mandamus "may be obtained by appropriate action or motion" under the Federal Rules of Civil Procedure. (Docket No. 34 at 5). With that in mind, the Court now turns to the two potential bases under federal law for a writ of mandamus.

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Pursuant to this statute, federal courts have the power "to enter such orders as may be necessary to enforce and effectuate their lawful orders and judgments, and to prevent them from being thwarted and interfered with by force, guile, or otherwise, whether or not the person charged with the violation of the judgment or decree was originally a party defendant to the action." *Gregris v. Edberg*, 645 F.Supp. 1153, 1157 (W.D.Pa. 1986). As this standard makes clear, a writ of mandamus (or the equivalent thereof) may only be granted under the All Writs Act where such a writ is necessary to aid a federal court's previously-acquired jurisdiction. *Hein v. Arkansas State University*, 972 F.Supp. 1175, 1180-1181 (E.D.Ark. 1997). Since this case does not implicate a previous order

issued by this Court, the All Writs Act affords Steinberg no sanctuary.

The other statutory provision upon which a writ of mandamus may be based is 28 U.S.C. § 1361, which provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361. As several courts have recognized, the jurisdiction granted to federal district courts under § 1361 is limited to mandamus actions seeking to compel *federal* officers and employees to perform ministerial duties. *Lebron v. Armstrong*, 289 F.Supp.2d 56, 58 (D.Conn. 2003); *Robinson v. People of the State of Illinois*, 752 F.Supp. 248, 248-249 (N.D.Ill. 1990). "Federal courts have no general power to compel action by state officers," including action by "state judicial officials." *Robinson*, 752 F.Supp. at 248-249. Accordingly, even if Steinberg's request for mandamus relief were not independently barred by the *Rooker-Feldman* doctrine, this Court would still lack jurisdiction to entertain it. *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988).

## G. The Takings Clause

The Takings Clause of the Fifth Amendment provides that "private property" shall not "be taken for public use without just compensation." U.S. CONST., AMEND. V. This constitutional prohibition is applicable to the States by virtue of the Due Process Clause of the Fourteenth Amendment. *Northern States Power Co. v. Federal Transit Administration*, 358 F.3d 1050, 1057, n. 5 (8th Cir. 2004). The Takings Clause does not categorically prohibit the taking of private property for a public use, "but instead places a condition on the exercise of that power."

*First Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314 (1987). The purpose of the Takings Clause is to bar the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 336 (2002), quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

On February 10, 2009, Steinberg sought a *pro rata* refund of his annual assessment fee, since his disbarment had precluded him from using his attorney's license for the full year contemplated by his payment of the annual fee. (Docket No. 21-2). Nine days later, he was informed that the assessment fee was not prorated, and that he was not entitled to a refund of any portion of that fee. (Docket No. 21-3). Steinberg now claims that his voluntary payment of the assessment fee constituted a "taking" of his property without "just compensation," since he only received "compensation" (i.e., the ability to practice law) for a fraction of the year for which he had been charged. (Docket No. 21 at ¶¶ 108-114). It is not clear what type of relief he seeks. Nonetheless, any attempt on his part to obtain monetary relief (either from the Pennsylvania Supreme Court or from the individual Justices in their official capacities) would be barred by the Eleventh Amendment. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 950-956 (9th Cir. 2008); *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 526-528 (6th Cir. 2004). The Eleventh Amendment would also bar an attempt to seek equitable relief against the Pennsylvania Supreme Court. *Seminole Tribe*, 517 U.S. at 58.

There is no need for the Court to consider whether any form of relief against the individual Justices would be viable under these circumstances. Assuming that the collection of the assessment fee is an administrative action that is wholly unprotected by judicial immunity,

Steinberg's Takings Clause claims are substantively meritless.  First of all, he voluntarily chose to pay his annual assessment fee even though he knew about his impending disbarment.  Second, he benefitted from his payment of the fee in that he was able to continue practicing law until the effective date of his disbarment.  When a fee is at issue, the Constitution requires only that the fee represent a "fair approximation of the cost of benefits supplied" by the government.  *United States v. Sperry Corp.*, 493 U.S. 52, 60 (1989), quoting *Massachusetts v. United States*, 435 U.S. 444, 463, n. 19 (1978).  The Supreme Court has never held that a fee must be "precisely calibrated" to the use that a particular individual makes of government benefits.  *Sperry Corp.*, 493 U.S. at 60.  Consequently, Steinberg's Takings Clause claims must fail.

## H.     Motion for Leave to Amend

On May 4, 2009, Steinberg filed a motion for leave to amend his complaint in order to seek compensatory and punitive damages against the respondents for publishing a notice of his disbarment in the *Beaver County Times* even though he had not maintained a law office in Beaver County for over twenty years.  (Docket Nos. 51 & 51-2).  The respondents filed their response to this motion two days later.  (Docket Nos. 54 & 55).  Steinberg wishes to seek compensatory and punitive damages pursuant to a "false light" theory.  This cause of action, however, is rooted in Pennsylvania law.  *Burger v. Blair Medical Associates, Inc.*, 964 A.2d 374, 376 (Pa. 2009)(recognizing "publicity that unreasonably places the other in a false light before the public" as one of four "invasion of privacy" theories).  It is not rooted in federal law.  The Court has already concluded that all of Steinberg's federal claims must be dismissed.  If Steinberg's false light claims were presently pending, the Court would decline to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3).  *Combs v. Homer-*

*Center School District*, 540 F.3d 231, 253-254 (3d Cir. 2008). Since they are not presently before the Court, and given that all of Steinberg's federal claims must be dismissed, it would be futile to grant leave to amend at this stage. The motion for leave to amend will be denied.[29] No opinion is expressed as to whether Steinberg's allegations, if proven, would entitle him to damages under Pennsylvania law. Steinberg is free to pursue his false light claims in a Pennsylvania court if he believes that damages are warranted.

## VI.    <u>Conclusion</u>

Given the foregoing analysis, it is clear that Steinberg cannot obtain the relief that he seeks. His requests for retrospective relief are barred by the *Rooker-Feldman* doctrine. He does not have standing to seek prospective relief. His claims against the Pennsylvania Supreme Court are barred by the Eleventh Amendment. His claims for injunctive relief against the individual Justices are barred by the FCIA. This Court has no jurisdiction to entertain his request for a writ of mandamus. He alleges no violation of the Takings Clause. Because Steinberg's federal claims must be dismissed, the Court will not exercise supplemental jurisdiction over the state claims that he wishes to add.

Accordingly, the respondents' motion to dismiss (*Docket No. 29*) must be granted, Steinberg's motion for a preliminary injunction (*Docket No. 22*) must be denied, Steinberg's motion for a writ of mandamus (*Docket No. 23*) must be denied, and Steinberg's motion for leave

---

[29]On May 1, 2009, Steinberg informally asked for an order restraining the respondents from publishing a notice of his disbarment in *The Pennsylvania Lawyer* until after the conclusion of this litigation. (Docket No. 50 at 6). That request has already been denied as moot. (Docket No. 57).

to amend (*Docket No. 51*) must be denied. The Court expresses no opinion as to whether Rule 215(b) is constitutional, either in its general application or as applied to Steinberg.

BY THE COURT:


s/Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Dated: June 10, 2009


cc/ecf: All parties of record